UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:21-cr-32 |
| ) | |
| JAVONTE WYNN, ) | Judges Atchley/Steger |
| also known as "CHUCCY WYNN," ) | |
| also known as "CLICC CLACC" ) | |

## REPORT AND RECOMMENDATION

**I.    Introduction**

This matter is before the Court on Defendant's Motion to Suppress [Doc. 22]. Defendant contends that police lacked reasonable suspicion to search the vehicle in which he was seated and that they lacked probable cause to seize him. Defendant further asks the Court to suppress the gun found by police officers underneath the passenger seat where Defendant was located. The government responds that the firearm was lawfully discovered as part of a *Terry* stop, and that, even if a Fourth Amendment violation occurred, the firearm should not be suppressed because the officers' actions were sufficiently reasonable.

The Fourth Amendment to the United States Constitution secures the right to be free from unreasonable search and seizure. Against this backdrop, the Court must determine: (1) whether police officers had probable cause regarding a traffic violation; (2) whether officers had reasonable suspicion to initiate a *Terry* stop; and (3) whether the firearm in the vehicle should be suppressed.

For the reasons set forth below, the Court recommends that Defendant's Motion to Suppress [Doc. 22] be **DENIED**.

## II. Facts

On December 31, 2020, multiple Chattanooga Police Officers were assigned to work overtime to curb any potential violence or gun crime related to the New Year's Eve holiday. New Year's Eve has historically seen elevated levels of violent crime among gang members in Chattanooga. Officer Ethan Lee was working this assignment and became aware of a party occurring at 3520 Brainerd Road in Chattanooga, Tennessee. Officers had information that multiple members of the Gangster Disciples and 5-2 Hoover Crips street gangs were likely to be in attendance. At approximately 10:30 p.m., Lee and other officers responded to the area to have a visible presence with the goal of reducing the potential of gun violence. While walking through the parking lot, officers observed an unoccupied Dodge Charger with multiple firearms visible in plain view through the windows. Officers observed an AK-47 style pistol in the front passenger side area, a pistol in the front driver side area, and another pistol in the rear passenger seat partially covered by an article of clothing.

The owner of the vehicle, Christopher Smith, exited the party and spoke with officers. Smith provided his Tennessee Handgun Carry Permit. Officers explained the danger and recklessness of leaving multiple firearms visible in a vehicle. Compounding the danger was the fact that the vehicle was unlocked. During the interaction, Smith was only able to provide a description of the AK-47 style pistol and the pistol in the driver side area, a Springfield pistol. Officer Lee told Smith he found it suspicious that he could only identify two of the three firearms. Combined with the location of the firearms, Officer Lee did not believe all of the firearms belonged to Mr. Smith. Rather, Officer Lee surmised that one or more of the firearms likely belonged to passengers of the vehicle.

Approximately four hours later, at 2:30 a.m. on January 1, 2021, Officer Lee and other

officers were near Dodson Avenue, Milne Street, and Taylor Street in East Chattanooga. The officers were in this area following their response to an incident in which several Blood gang members led police on a vehicle pursuit and were found in possession of firearms. While there, officers observed the same Dodge Charger they had encountered earlier in the evening at 3520 Brainerd Road. It was parked facing traffic in the 900 block of Taylor Street in violation of the Chattanooga City Code. The 900 block of Taylor Street is adjacent to "Chatty's," a restaurant and bar at 2301 Milne Street. During late night/early morning hours, Chatty's was known to be frequented by Gangster Disciple and Crip gang members. Officers routinely responded to calls for service, disorders, and other criminal activity in the immediate surrounding area.

As Officer Lee and other officers walked towards the Dodge Charter, they observed that the vehicle was occupied by two people, a front seat passenger and a rear seat passenger. The driver's seat was unoccupied. While approaching the vehicle, Officer Lee recognized the front seat passenger to be the Defendant, Javonte Wynn. Officer Lee was aware that Defendant was a member of the 5-2 Hoover Crips street gang and a multi-convicted felon, including a conviction for being a felon in possession of a firearm. Officer Lee also knew Defendant had been charged with First Degree Murder in 2019, but the charge was subsequently dismissed in state court.

Officer Lee alerted other officers to Defendant's identity and that he was a convicted felon. At this point several officers drew their weapons and ordered the occupants to the raise their hands and unlock the doors of the vehicle. Officer Lee warned other officers to "watch it" because it was "Javonte Wynn and his brother." At one point, Officer Lee asked, "Is the gun still there?" An officer with a different vantage point replied, "There's a gun in the driver, I can't see any other ones." Initially, Defendant and his brother, Keyshawn Wynn, did not comply with officers' orders to unlock the vehicle. After eighteen orders to open the door—which orders were issued verbally

and forcefully in the course of about one minute—Defendant unlocked the door. Officers removed Defendant from the vehicle and detained both him and his brother.

Officers conducted a search of the vehicle and recovered the following firearms: a loaded Springfield XD9 9-millimeter pistol from the driver's door; a loaded Glock 22 .40 caliber pistol with an extended magazine under the front passenger seat (where Defendant was seated); a loaded Century Arms RAS47 7.62 AK-style pistol from the back passenger-side floorboard (where Keyshawn Wynn was seated); and a loaded Anderson Arms AM15 7.26 AR-style pistol from the trunk. When officers removed Keyshawn Wynn from the vehicle, he had a stolen, loaded Browning Arms BDM 9-millimter pistol in his waistband.

The owner of the vehicle never returned to the vehicle while officers were on the scene. Officer Lee issued a citation for improper parking. Defendant was arrested and charged with violations of state law. On March 23, 2021, a Grand Jury for the United States District Court for the Eastern District of Tennessee returned a single-count indictment charging Defendant with being a felon in possession of a firearm.

### III. Discussion

#### A. Probable Cause for a Traffic Violation

Defendant argues that police officers used the illegally parked vehicle as a pretext for a seizure that lacked probable cause. Thus, Defendant claims he was illegally seized as soon as officers surrounded the vehicle.

A traffic stop necessarily involves a seizure of the occupants of a vehicle. *Brendlin v. California*, 551 U.S. 249, 255 (2007). However, an officer may lawfully stop a car when probable cause exists to believe that a traffic violation has occurred or if there is reasonable suspicion of an ongoing crime. *Id.* at 748; *see United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) (citing

*Whren v. United States*, 517 U.S. 806, 810 (1996)) ("[T]here is nothing unreasonable about stopping a vehicle whose driver has just committed a traffic violation."). The proper analysis ignores an officer's state of mind and focuses on "the objective reality (or not) of whether the officers had probable cause to believe that a crime, including a traffic violation, had occurred." *Street*, 614 F.3d at 232 (citing *Whren*).

Here, the Dodge Charger in which Defendant was seated was parked on the side of the road facing the wrong way. Chattanooga City Code § 24-289(a) states:

> Except where angled street parking is allowed under section 24-290, and except where otherwise authorized in this chapter, no person shall stand or park a vehicle in a roadway other than parallel with the edge of the roadway headed in the direction of lawful traffic movement and with the right-hand wheels of the vehicle within eighteen (18) inches of the curb or edge of the roadway.

Since the vehicle was not facing "in the direction of lawful traffic," the officers had objective probable cause to believe a traffic violation had occurred. Additionally, whether the officers were using the parking violation as a pretext is immaterial. Their state of mind is not relevant. Therefore, the seizure of Defendant was valid pursuant to the traffic stop.

### B. Reasonable Suspicion for a *Terry* Stop

Defendant argues that the officers did not have reasonable suspicion to conduct an investigatory stop, commonly referred to as a *Terry* stop. He claims that because officers drew their guns on Defendant before visual confirmation of the gun near the driver's door, their actions were not consistent with an investigation.

An investigatory stop is justified with a finding that a police officer had reasonable suspicion that a person is about to be or is engaged in criminal conduct. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Conceptually, "reasonable suspicion" is difficult to articulate precisely. *Ornelas v. United States*, 517 U.S. 690, 695 (1996).

But proper analysis looks at the totality of the circumstances unique to each case and determines whether the detaining officer had a particularized and objective basis for suspecting illegal conduct. *Id.* at 696.

Here, the totality of the circumstances included:

1. A history of violent gang activity on New Year's Eve that caused these officers to be specially deployed to deter such activity;

2. Multiple visible firearms were present in the same Dodge Charger at a different location approximately four hours earlier;

3. When the Dodge Charger was seen earlier at a different location, the visible firearms were located (1) by the driver's door, (2) by the front passenger seat, and (3) on the backseat;

4. The driver of the vehicle, Mr. Smith, had a Tennessee Handgun Carry Permit but was unable to give a description of all of the visible firearms;

5. The Dodge Charger was illegally parked at about 2:30 a.m. in an area of Chattanooga known to officers to have frequent gang activity;

6. The parked vehicle had two non-driving passengers sitting in it; and

7. Police recognized the individual in the front passenger seat (Defendant) to be a convicted felon with gang ties, and knew that he had a previous conviction for being a felon in possession of a firearm, as well as a previous murder charge.

These specific and articulable facts provided a particularized and objective basis for officers to suspect that Defendant was committing a felony by possessing or constructively possessing a firearm. The specific facts related to the firearms in the vehicle, the background history of the setting and why they were on specially on duty, and the specific knowledge of Defendant's criminal history painted a picture consistent with Defendant illegally possessing a firearm. Thus, considering the totality of the circumstances, officers had reasonable suspicion of criminal conduct. Contrary to Defendant's argument, this reasonable suspicion existed before officers saw the gun by the driver's door during this 2:30 a.m. encounter with Defendant. The

officers' reasonable suspicion became actionable as soon as they recognized Defendant as a convicted felon and realized that he was sitting in a vehicle in which they had seen a number of firearms just a few hours earlier. Officers then drew their guns in response to their reasonable suspicion.

Ultimately, police officers seized Defendant lawfully pursuant to a *Terry* stop because they had reasonable suspicion that Defendant was committing a crime, i.e., that he was a convicted felon in possession of a firearm.

## IV. Conclusion

Police officers lawfully seized Defendant initially pursuant to a traffic violation. The seizure continued pursuant to a lawful *Terry* stop, which led to a valid investigatory search based upon police officers' reasonable suspicion that Defendant was engaged in criminal conduct.

As a result, Defendant's Fourth Amendment rights were not violated and the firearm relevant to this matter should not be suppressed. For these reasons, as set forth more fully above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 22] be **DENIED**.[1]

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370 (6th Cir. 1987).