UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) ) ) | |
| ) | Case No. 1:21-cr-32 |
| v. ) ) | Judge Atchley |
| ) | Magistrate Judge Steger |
| JAVONTE WYNN ) ) ) | |

**ORDER APPROVING AND ADOPTING REPORT AND RECOMMENDATION**

On March 15, 2022, Magistrate Judge Christopher H. Steger issued a Report and Recommendation ("R&R") [Doc. 33] recommending that Defendant Javonte Wynn's Motion to Suppress [Doc. 22] be denied. Defendant requested additional time to file objections to the R&R [Doc. 35], and this Court granted that request. [Doc. 36]. Defendant, through counsel, filed objections to the R&R on April 12, 2022. [Doc. 37]. The United States responded to Defendant's objections on April 25, 2022. [Doc. 38].

For the reasons explained below, Defendant's objections to the R&R are **OVERRULED**. Further, the R&R [Doc. 33] is **APPROVED** and **ADOPTED** as the opinion of the Court.

**I.    STANDARD**

This Court is required to perform *de novo* review of any objections to an R&R. 28 U.S.C. § 636(b); *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) ("It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."). The Court can accept, modify, or reject the findings or

1

recommendations – in whole or in part. *Logan v. City of Chattanooga, Tenn.*, 2019 WL 4888890, at *1 (E.D. Tenn. Oct. 3, 2019).

## II.     Defendant's Objections to R&R

The Court identifies four distinct objections to the R&R in Defendant Javonte Wynn's Objection to the Magistrate Jduge's [sic] Report and Recommendation. [Doc. 37]. First, Defendant objects to the factual findings of the R&R "to the extent they are inconsistent with the recitation of facts" laid out in the objection. [*Id.* at n.1]. Second, Defendant objects to the finding that police performed a *Terry* stop, asserting the encounter was actually an unconstitutional arrest. [*Id.* at 5].[1] Third, Defendant objects to the finding that—even if the encounter began as a *Terry* stop—such stop was lawful and reasonable. [*Id.* at 7]. Finally, Defendant objects to the finding that his seizure was justified by a traffic stop. [*Id.* at 10]. Each of Defendant's objections are addressed individually below.

### A.     First Objection: Proposed Findings of Fact

Defendant's first objection is to the proposed findings of fact in the R&R. [Doc. 37 at 2]. However, where objections are conclusive or general, a district court need not provide *de novo* review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Instead, the parties have "the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* Rather than provide particularized and concrete objections to the factual findings, Defendant merely provides his own recitation of events and makes a generalized objection. [*See* Doc. 37 at n.1 ("Mr. Wynn objects to the factual findings of the Report and Recommendation to the extent they are inconsistent with the recitation of facts contained herein.")]. At no point in Defendant's "Background" Section, where the footnote stating a generalized objection is found, does Defendant

---

[1] For consistency and ease of reference, record citations are to the CM/ECF-stamped document and page number, not to the internal pagination of any filed document. Where possible, citation is made to more specific subdivisions within a document.

identify specific factual findings in the R&R to which he objects. Therefore, this Court has no particularized objections to review.

However, after a review of the record generally, Magistrate Judge Steger's proposed findings of fact are appropriate and accurate. Defendant's general objections to the factual findings in the R&R are **OVERRULED**. This Court adopts and incorporates the proposed findings of fact contained in the R&R.

### B. Second Objection: *Terry* Stop vs. Arrest

According to Defendant, the R&R errs by treating the initial encounter between Defendant Wynn and the police as a *Terry* stop. Defendant argues that he was arrested "the moment officers surrounded the vehicle in which he was seated, pulled their guns, and started shouting commands . . . ." [Doc. 37 at 5]. Rather than police conducting an investigatory detention or *Terry* stop, Defendant believes he was effectively arrested at the beginning of his encounter with police officers. [*Id.*]. The United States argues the officers had reasonable suspicion that Defendant unlawfully possessed firearm(s), supporting an investigatory detention. [Doc. 38 at 4]. Only after seeing the firearm in the driver's side door did "the reasonable suspicion ripen[] into probable cause supporting the defendant's arrest for being a felon in possession of a firearm." [*Id.*].

There is "[n]o bright-line rule defin[ing] the length or scope of a *Terry* stop or when such a stop becomes an arrest." *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012) (citing *Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 823 (6th Cir. 1999)). Instead, the issue is decided on a case-by-case basis by the lower courts. *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991). In making the determination, courts look to the scope and nature of restraints placed on a person's liberty. *Id.* (citing *United States v. Place,* 462 U.S. 696, 705-08 (1983)). When police actions "exceed the bounds permitted by reasonable suspicion, the seizure becomes an arrest and must be supported by probable cause."

*Id.* (citing *Dunaway v. New York*, 442 U.S. 200, 207 (1979)). Further, when distinguishing a *Terry* stop from an arrest, the Sixth Circuit has considered the conduct of the police, the characteristics of the particular defendant, and the physical surroundings of the encounter. *Id.* at 857 (citing *United States v. Grant*, 920 F.2d 376, 382 (6th Cir. 1990)). Courts also consider the manner in which the search and seizure was conducted. *Terry v. Ohio*, 392 U.S. 1, 28-29 (1968).

Defendant claims that an "arrest occurs when a reasonable person believes he isn't free to leave or end an encounter with police," citing *United States v. Mendenhall*. [Doc. 37 at 5]. However, *Mendenhall* actually states that a *seizure* occurs at this point—and a *Terry* stop is a limited type of seizure. 446 U.S. 544, 554 (1980). In other words, even if the Defendant did not believe he was free to leave or end the encounter, this does not necessarily mean he was arrested at that particular moment. Rather, there are other factors that should be considered when determining when and if an arrest occurred.

The manner in which the police conducted the stop could arguably suggest that Defendant was arrested from the beginning of the encounter. The officers drew their guns, surrounded the Defendant and other occupant of the vehicle, and eventually raised their voices when instructing the occupants in how to proceed. *See* United States Ex. 1; Defendant's Ex. 1, 2. However, despite Defendant's argument to the contrary, these facts alone are not determinative in finding an arrest. There are other considerations to examine, including the characteristics of Defendant and the greater context of the encounter. *See Richardson*, 949 F.2d at 857 (listing these as factors for consideration when distinguishing a *Terry* stop from an arrest).

The characteristics of Defendant suggest that the officers acted within the bounds allowed by reasonable suspicion. Defendant is a known felon. [Doc. 34 at 17, 30]. At the time police recognized Defendant, they not only knew he was a felon sitting in a car that contained several

4

firearms just hours beforehand [*Id.* at 9-10, 15], they also recognized that he has a history of violent offenses. [*Id.* at 17]. This intimate and detailed knowledge of Defendant, his past, and the particular circumstances he found himself in explains why the police officers acted in the manner they did—for officer safety. In fact, Officer Lee explained that the situation was fraught "[d]ue to [Defendant's] history . . . and knowing his violent tendencies . . . [and] due to the amount of firearms that we observed in the vehicle prior." [*Id.* at 18].

The physical surroundings of the encounter also suggest that the police acted within the bounds permitted by reasonable suspicion. The encounter occurred in the very early morning when it was still dark outside. [*Id.* at 12]. The encounter also occurred on New Year's Eve, a night that, historically, has increased gun violence. [*Id.* at 7]. Furthermore, the car Defendant was found in was parked in an area frequented by gang members and where police regularly respond to reports of gun violence. [*Id.* at 13-15]. Again, these conditions suggest that the officers acted in a manner necessary to ensure their own safety.

After examining the greater circumstances of the stop, this Court finds that the officers behaved in a reasonable manner—and within the scope of reasonable suspicion. Once the officers identified a gun within reach of Defendant, probable cause allowing for an arrest arose. [*Id.* at 20]. However, even before such identification was made, the circumstances surrounding the stop justified the behavior and response of the police. Therefore, for the reasons stated above, Defendant's objection to the finding that police officers first conducted a lawful *Terry* stop, as opposed to immediately arresting Defendant Wynn, is **OVERRULED**.

### C. Third Objection: *Terry* Stop as Unconstitutional

In light of the determination that the officers performed a lawful *Terry* stop, Defendant further objects to the finding that reasonable suspicion was established to allow for the stop. [Doc. 37 at 7]. Defendant argues that the conduct of the police during the alleged *Terry* stop was

5

unreasonable and overly intrusive. [*Id.*]. For these reasons, Defendant believes the *Terry* stop was unconstitutional and objects to the R&R's finding.

When evaluating whether a *Terry* stop was constitutional, courts engage "in a two-part analysis of the reasonableness of the stop." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). First, courts ask "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *Id.* (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). Second, if the basis for the *Terry* stop was proper, courts then determine "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id.* (quoting *Garza*, 10 F.3d at 1245).

### i. Reasonable Suspicion Analysis

To perform a *Terry* stop, officers must be aware of specific and articulable facts that give rise to reasonable suspicion of criminal activity. *See Davis*, 430 F.3d at 354. That is, reasonable suspicion "must be based on specific, objective facts," *Brown v.* Texas, 443 U.S. 47, 51 (1979), and requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity," *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). When determining whether such reasonable suspicion existed, courts look to the totality of the circumstances in place at the time of the incident. *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (6th Cir. 2008)). In other words, courts should consider "the whole picture." *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

Here, the totality of the circumstances clearly demonstrate that reasonable suspicion of criminal activity existed. The encounter occurred in the early morning following New Year's Eve,

6

a night that has a history of violent gang activity in the community. [Doc. 34 at 7]. In fact, the officers involved in the encounter with Defendant were on a task force specifically working to curb gun violence that evening. [*Id.* at 5-6]. When the car at issue was first spotted, there were multiple guns found in plain view. [*Id.* at 9-10]. While the owner/driver of the vehicle possessed a permit to carry a handgun, he could *not* give a description of all of the guns in the car. [*Id.* at 11]. When officers came upon the same vehicle a few hours later, it was illegally parked with two passengers sitting in it. [*Id.* at 15-16]. The owner/driver was not present. [*Id.* at 45]. Upon approaching the car, Defendant was identified [*Id.* at 16-17], and the police were aware of Defendant's alleged gang ties [*Id.* at 17], that he was a convicted felon [*Id.*], that he had been convicted for being a felon in possession of a firearm [*Id.*], and that he had previously been charged with murder. [*Id.*].

Combined, the circumstances surrounding the encounter and the specific knowledge the officers possessed gave rise to a reasonable suspicion of criminal activity—namely that the Defendant was committing a felony by possessing a firearm. The knowledge that several guns—all of which could not be accounted for by the owner of the car—were in the same car just hours beforehand *and* the knowledge that Defendant was a convicted felon with a history of gun charges was enough to create the reasonable suspicion necessary to support a proper *Terry* stop.

        **ii.**     **Reasonableness of Intrusion Analysis**

Next, the degree of intrusion must be reasonably related to the officers' suspicions and the surrounding circumstances. *Davis*, 430 F.3d at 354. In making this determination, courts consider "(1) if the detention was sufficiently limited in time and (2) if the investigative means used the least intrusive means reasonably available." *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009) (quoting *United States v. Davis*, 514 F.3d 596, 608 (6th Cir. 2008)).

7

It is noted that the parties did not brief the Court on this second prong of the reasonableness analysis before Defendant raised it in his objections to the R&R; thus, the R&R does not address this particular portion of the analysis. Defendant uses this second prong to argue the *Terry* stop was itself unreasonable. However, the factors considered here largely resemble the analysis used to determine whether a particular seizure constitutes an arrest. *See Simmons v. Grandison*, 833 F. Supp. 2d 702, 709-10 (E.D. Mich. 2011) (examining the scope of the stop and whether this scope meant the detention constituted an arrest in the same analysis).

The Court need not restate its entire reasoning for finding that the detention was reasonable in scope and manner and, therefore, did not constitute an arrest. However, it will briefly address the two considerations laid out in *See* and *Davis*. 574 F.3d at 313; 514 F.3d at 608. First, the *Terry* stop was reasonable in time because it only lasted until the officers noticed a gun within reach of Defendant—thus giving rise to probable cause allowing for the Defendant's arrest. [Doc. 34 at 20]. Second, the investigative means were the least intrusive *reasonably* available given the dangerous circumstances surrounding the stop. While drawing their guns and surrounding the vehicle might be viewed as escalatory, these actions were reasonable and necessary for officer safety given the context of the situation. Again, this stop occurred in the early morning, at dark, on a date in which gun violence is traditionally increased, and in an area wherein police frequently responded to reports of gun violence. [Doc. 34 at 7, 12, 14-15]. Further, the officers identified Defendant as an individual with a history of crimes involving guns, and Defendant was sitting in a car in which the officers had seen several guns just hours before. [*Id.* at 9-12, 16].

Thus, this Court finds that (1) the officers were aware of specific and articulable facts giving rise to reasonable suspicion *and* (2) that the resulting conduct was reasonable in light of

their suspicions and the surrounding circumstances. Defendant's Objection to the finding that police conducted a lawful *Terry* stop is **OVERRULED**.

### D. Fourth Objection: Seizure of Defendant Not Justified by Traffic Stop

Finally, Defendant objects to the finding that his seizure was justified because the vehicle in which he was sitting was illegally parked. [Doc. 37 at 10]. Defendant objects because "Officer Lee stated he did not approach the Dodge Charger containing Mr. Wynn for the purpose of writing a parking citation." [Doc. 37 at 10]. Defendant also claims that the stop was "illegally extended" and he should only have detained for a period "long enough to write [a] ticket." *Id.*

A traffic stop inherently involves a seizure of the occupants of a vehicle, and the state of mind of the officer(s) is immaterial. That is, the analysis focuses on "the objective reality (or not) of whether the officers had probable cause to believe that a crime, including a traffic violation, had occurred." *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) (citing *Whren v. United States*, 517 U.S. 806, 810-13 (1996)). Here, through testimony and video evidence, the record clearly establishes that Defendant was sitting in a car illegally parked in violation of Chattanooga City Code; that is, the car was *not* parked "headed in the direction of lawful traffic movement." Chattanooga City Code § 24-289(a); *see* United States Ex. 1 (video depicting scene of encounter between Defendant and officers); [Doc. 34 at 15]. Thus, there was probable cause that a traffic violation had occurred, and the initial stop was valid pursuant to this traffic violation.

Defendant then argues that the stop was "illegally extended" beyond the period of time in which an officer could have written a ticket for the parking violation. Defendant cites *Rodriguez v. United States* in arguing that Officer Lee could only detain him for as long as it took to write a ticket for the initial parking violation. [Doc. 37 at 11]. However, *Rodriguez* involved a traffic stop in which the detention was prolonged, and a dog sniff performed, *without reasonable suspicion that criminal activity other than the traffic violation had occurred*. 575 U.S. 348 (2015). Here, on

9

the other hand, there was reasonable suspicion of distinct criminal activity. After the officers approached the parked car, they identified the Defendant [Doc. 34 at 16-17] and were aware that mere hours beforehand multiple guns were in the car. [*Id.* at 9-12]. Once the officers recognized these facts, combined with the other factors explored in the totality of circumstances analysis above,[2] reasonable suspicion of *separate* criminal activity arose, and a *Terry* stop was performed. In other words, once reasonable suspicion of the separate criminal activity arose, namely the unlawful possession of firearms, there was a stand-alone reason to seize Defendant outside of the initial traffic stop. *See Davis*, 430 F.3d at 353-54 ("Once the purpose of the initial traffic stop is completed, an officer cannot further detain the vehicle or its occupants unless something happened *during the stop* to cause the officer to have a 'reasonable and articulable suspicion that criminal activity [is] afoot.'" (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)).

In short, Officer Lee's state of mind was immaterial at the time of the traffic infraction. Further, because reasonable suspicion that criminal activity other than the initial traffic violation existed, the officers did not "illegally extend" the initial stop. Therefore, Defendant's objection to the finding that the traffic stop at issue justified the seizure of Defendant is **OVERRULED**.

### III. CONCLUSION

Thus, for all of the reasons expressed above, Defendant Javonte Wynn's objections to the R&R are **OVERRULED**. The R&R is **APPROVED** and **ADOPTED** as the opinion of the Court, and Defendant's Motion to Suppress [Doc. 22] is **DENIED**.

**SO ORDERED**.

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**

---

[2] *See* Section II.C for a more complete picture of how the totality of the circumstances provided specific and objective bases for the officers to suspect criminal activity other than the parking violation.